STATE OF MINNESOTA                 DISTRICT COURT
COUNTY OF RAMSEY                SECOND JUDICIAL DISTRICT
                                        CASE TYPE: Other Civil

---

THE COUNTY OF RAMSEY and
THE COUNTY OF HENNEPIN, on behalf of themselv
and all other Minnesota counties,

                                   Court File No._____

                  Plaintiffs,        Hon. _____

vs.

MERSCORP HOLDINGS, INC., MORTGAGE              **COMPLAINT**
ELECTRONIC REGISTRATION SYSTEMS, INC.,
BANK OF AMERICA CORPORATION, BANK OF
AMERICA, N.A., CITIGROUP INC., CITIBANK,
N.A., CITIMORTGAGE, INC., DEUTSCHE BANK
NATIONAL TRUST COMPANY, EVERBANK,
GOLDMAN SACHS MORTGAGE COMPANY, GS
MORTGAGE SECURITIES CORP., HSBC BANK
U.S.A., N.A., JP MORGAN CHASE BANK, N.A.,
MORGAN STANLEY ABS CAPITAL I, INC.,
SUNTRUST MORTGAGE, INC., TCF NATIONAL
BANK, THE BANK OF NEW YORK MELLON,
UNITED GUARANTY CORPORATION, U.S.
BANK N.A., WELLS FARGO BANK, N.A., and
DOE CORPORATIONS I – MMM,

                  Defendants.

---

## CLASS ACTION COMPLAINT

       Plaintiffs Ramsey County, Minnesota, ("Ramsey County") and Hennepin County,

Minnesota, ("Hennepin County"), on behalf of themselves and all other Minnesota counties, for

their Class Action Complaint against MERSCORP Holdings, Inc.; Mortgage Electronic

Registration Systems, Inc. ("MERS"); Bank of America Corporation; Bank of America, N.A.;

Citigroup Inc.; Citibank, N.A.; CitiMortgage, Inc.; Deutsche Bank National Trust Company;

EverBank; Goldman Sachs Mortgage Company; GS Mortgage Securities Corp.; HSBC Bank,

U.S.A., N.A.; JP Morgan Chase Bank, N.A.; Morgan Stanley ABS Capital I, Inc.; SunTrust

Mortgage, Inc.; TCF National Bank; The Bank of New York Mellon; United Guaranty

Corporation; U.S. Bank N.A.; Wells Fargo Bank, N.A.; and Doe Corporations I – MMM

(collectively, "Defendants") allege and state upon information and belief as follows.[1]

## NATURE OF THE ACTION

1.      This is a class action commenced by Plaintiffs Ramsey County and Hennepin

County, on behalf of themselves and all other Minnesota counties, arising out of Defendants'

failure to prepare and record mortgage assignments at county recorders' offices and pay

attendant recording fees, as required by Minnesota law.

2.      Minnesota's recording statutes provide that all mortgage assignments *shall be

recorded* in the county recorder's office of the county in which the premises are situated.

Minnesota law also provides that county recorders, who are responsible for maintaining their

county's public land records, shall charge and collect fees for each land instrument (e.g., a

mortgage assignment) they record.

3.      To facilitate the rapid securitization of mortgage loans, and avoid paying county

recording fees, Defendants and other mortgage industry participants purposely failed to prepare

and record mortgage assignments.  Defendants accomplished this goal by recording land

instruments in the name of a strawman – MERS – a private corporate entity that Defendants used

as their placeholder in county public records to preserve their priority to repayment, or to alter or

foreclose on the mortgage.  Meanwhile, the true identity of the holder is shielded from public

disclosure.

---

[1] All of the factual allegations in this amended complaint are derived from publicly-available sources.

4.      Defendants then used MERS so that the land records would appear as though one single entity held the mortgage, but in reality hid the many assignments Defendants made electronically and simply failed to create or record in the proper Minnesota county recorders' offices.  In other instances, Defendants simply failed to record any mortgage assignments at all – regardless of how many times each mortgage loan had actually been assigned.

5.      Consequently, as alleged herein, Defendants collectively and purposely:

a.      Violated Minnesota's statutory recording requirements, M.S.A. § 507.34, by deliberately failing to prepare and record mortgages and assignments in county recorders' offices;

b.      Circumvented state laws in order to improperly retain economic benefits, by avoiding costs associated with recording (i.e., recording fees, public disclosure of the many electronic assignments necessary for securitization), while receiving priority of their liens, which unjustly enriched Defendants at the direct expense of Minnesota counties and the public, whose interests Minnesota counties are charged with protecting; and

c.      Conspired to violate Minnesota's mandatory recording laws and unjustly retain economic benefits to the direct detriment of Minnesota counties.  Worse, Defendants continue to do so – systematically clouding land titles throughout Minnesota counties' public records.

6.      To remedy the harms caused by Defendants' illicit conduct, Plaintiffs seek equitable relief, declaring the mandatory nature of Minnesota's recording laws, and permanently enjoining Defendants from failing to prepare and record all mortgages and assignments.

Plaintiffs, alternatively, seek to disgorge all profits that Defendants improperly and unjustly

retained by willfully violating Minnesota's recording requirements.

## JURISDICTION

7.      This Court has personal and subject matter jurisdiction over the parties and causes

of action set forth in this Complaint.

8.      This Court has jurisdiction over Defendants as each has sufficient minimum

contacts with Minnesota so as to render the exercise of jurisdiction by Minnesota courts

permissible under traditional notions of fair play and substantial justice.

## PARTIES

9.      Plaintiff Ramsey County is a home rule charter county both politic and corporate

established pursuant to the laws of the State of Minnesota with the authority to sue and be sued.

As authorized by its Board of Commissioners, Plaintiff Ramsey County, by and through its

undersigned attorneys, brings this action on behalf of itself and all other Minnesota counties

pursuant to M.S.A. § 373.01.

10.     Plaintiff Hennepin County is a county within the State of Minnesota.  Hennepin

County is a body politic and corporate with the authority to sue and be sued.  As authorized by

its Board of Commissioners, Plaintiff Hennepin County, by and through its undersigned

attorneys, brings this action on behalf of itself and all other Minnesota counties pursuant to

M.S.A. § 373.01.

11.     Unless otherwise stated, Plaintiffs Ramsey County and Hennepin County shall be

collectively referred to herein as "Plaintiffs."

12.     Defendant MERSCORP Holdings, Inc. (f/k/a MERSCORP, Inc.)

("MERSCORP") is a Delaware corporation with its principal place of business in Vienna,

Virginia.  MERSCORP is involved in the ownership and operation of the MERS System, a

national registry that tracks ownership and servicing rights in residential mortgage loans,

including residential mortgage loans secured by real property located in the State of Minnesota.

13.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a

Delaware corporation with its principal place of business in Reston, Virginia.  MERS is a wholly

owned subsidiary of MERSCORP, and regularly conducts business in the State of Minnesota.

14.     Defendant Bank of America Corporation ("BAC"), individually and as successor-

by-merger (and as successor-in-interest) to CWALT, Inc.; Countrywide Home Loans, Inc. and

Countrywide Financial Corporation, is a Delaware corporation with its principal place of

business in Charlotte, North Carolina.  As described below, BAC, directly and/or indirectly

through its agents, employees, subsidiaries and/or related companies, including without

limitation Bank of America, N.A., CWALT, Inc., Countrywide Home Loans, Inc., Countrywide

Financial Corporation, Countrywide Capital Markets, CWABS, Inc., CWMBS, Inc., BAC Home

Loans Servicing LP (formerly known as Countrywide Home Loans Servicing, LP), BAC GP,

LLC (f/k/a Countrywide GP, Inc. and Countywide GP LLC), engaged in transactions related to

the securitization of mortgage loans on real property located within the State of Minnesota.

15.     Defendant Bank of America, N.A. ("BANA"), individually and as successor-by-

merger to LaSalle Bank National Association, is a national chartered bank with its main office

located in Charlotte, North Carolina and significant offices and operation in New York, New

York.  As described below, BANA, directly and/or indirectly through its agents, employees,

subsidiaries and/or related companies, including without limitation BAC, CWALT, Inc.,

Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Capital

Markets, CWABS, Inc., CWMBS, Inc., BAC Home Loans Servicing LP (formerly known as

Countrywide Home Loans Servicing, LP), BAC GP, LLC (f/k/a Countrywide GP, Inc. and

Countywide GP LLC), engaged in transactions related to the securitization of mortgage loans on

real property located within the State of Minnesota.

     16.     Defendant Citigroup Inc. ("Citigroup") is a New York corporation with its

principal place of business in New York, New York.  As described below, Citigroup, directly

and/or indirectly through its agents, employees, subsidiaries and/or related companies, including

without limitation Citigroup Financial Products, Inc., Citigroup Global Markets Realty Corp.,

Citigroup Mortgage Loan Trust Inc., Citibank, N.A., CitiMortgage, Inc., Citi-Residential

Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage

Company, Inc., Citigroup Mortgage Loan Trust, Inc., Citicorp Holdings Inc., Principal

Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the

securitization of mortgage loans on real property located within the State of Minnesota.

     17.     Defendant Citibank, N.A. ("Citibank") is a national banking association with its

main office located in Sioux Falls, South Dakota.  As described below, Citibank, directly and/or

indirectly through its agents, employees, subsidiaries and/or related companies, including

without limitation CitiMortgage, Inc., Citi-Residential Lending, Inc., Citicorp Acceptance

Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage

Loan Trust, Inc., Citicorp Holdings Inc., Principal Residential Mortgage, Inc., and Wholesale

Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans on real

property located within the State of Minnesota.

     18.     Defendant CitiMortgage, Inc. (f/k/a Citicorp Mortgage Inc., and Source One

Mortgage) (successor-by-merger-to ABN AMRO Mortgage Group, Inc.)) ("CitiMortgage"),

individually and as successor-by-merger-to Principal Residential Mortgage, Inc. ("PRMI"), is a

New York corporation with its principal place of business at 1000 Technology Drive, MS 140, O'Fallon, Missouri.  As described below, CitiMortgage is a wholly owned subsidiary of Citibank, N.A., directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Citibank, Citi-Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Citicorp Holdings Inc., PRMI, and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

19.     Defendant Deutsche Bank National Trust Company ("Deutsche Bank") is a federally chartered non-depository trust company with its principal place of business in Santa Ana, California. As described below, Deutsche Bank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Deutsche Bank Securities, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Minnesota.

20.     Defendant EverBank (f/k/a EverHome Mortgage Company) (d/b/a EverHome Mortgage) (to avoid confusion, collectively referred to herein as "EverHome") is a federal savings association, wholly owned by EverBank Financial Corporation, a privately held Florida corporation. As described below, EverHome, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation EverHome Mortgage Corporation, Everbank Mortgage Company, and EverBank Mortgage Company, LLC, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Minnesota.

21.     Defendant Goldman Sachs Mortgage Company ("Goldman Sachs") is a New York limited partnership with its principal place of business in New York, New York. Goldman Sachs Mortgage Company is the parent of GS Mortgage Securities Corp., and a subsidiary of Goldman Sachs Group, Inc.  As described below, Goldman Sachs Mortgage Company, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation GS Mortgage Securities Corp., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Minnesota.

22.     Defendant GS Mortgage Securities Corp. ("GS Mortgage") is a Delaware corporation with its principal place of business in New York, New York, and is a subsidiary of Goldman Sachs Mortgage Company.  As described below, GS Mortgage Securities Corp., directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Goldman Sachs Mortgage Company, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Minnesota.

23.     Defendant HSBC Bank, U.S.A., N.A. ("HSBC") is a national banking association with its main office located in McLean, Virginia.  As described below, HSBC, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation HSBC Mortgage Corp., U.S.A, HSBC Bank U.S.A Trust and HSBC Mortgage Services, Inc., engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

24.     Defendant JPMorgan Chase Bank, N.A. ("JPMorgan Chase"), individually and as successor-by-merger to Chase Home Finance, LLC, is a national banking association with its main office located in Columbus, Ohio.  As described below, JPMorgan Chase, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including

without limitation Chase Home Finance, LLC, Chase Home Finance Inc., Chase Home Mortgage Corp., Chase Manhattan Mortgage Corporation, Chase Mortgage Services Inc., WaMu Bank, WaMu Capital, WaMu Securities, WaMu Acceptance, Bank One Corporation, EMC Mortgage LLC and EMC Mortgage Corporation, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

25.     Defendant Morgan Stanley ABS Capital I, Inc. ("Morgan Stanley") is a Delaware corporation with its principal place of business in New York, New York.  As described below, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

26.     Defendant SunTrust Mortgage, Inc. ("SunTrust") is a Virginia corporation with its principal place of business in Richmond, Virginia.  As described below, SunTrust, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation SunTrust Bank and SunTrust Financial Corporation, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

27.     Defendant TCF National Bank ("TCF") is a federal savings and loan association, wholly owned by TCF Financial Corporation, a Minnesota corporation with its principal place of business in Wayzata, Minnesota.  As described below, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

28.     Defendant The Bank of New York Mellon ("Bank of New York") is a New York corporation its principal place of business in New York, New York.  As described below,

directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

29.     Defendant United Guaranty Corporation ("United Guaranty") is a North Carolina corporation with its principal place of business in Greensboro, North Carolina.  As described below, United Guaranty, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation United Guaranty Residential Insurance Company, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

30.     Defendant U.S. Bank N.A. ("U.S. Bank") is a national banking association with its main office located in Cincinnati, Ohio.  As described below, U.S. Bank, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

31.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), individually and as Norwest Bank, N.A. and Wells Fargo Bank of Minnesota, N.A., is a national banking association with its main office located in Sioux Falls, South Dakota.  As described below, Wells Fargo, directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Wells Fargo Funding Home Equity, Wells Fargo Home Mortgage, Inc., Wells Fargo America, Inc., and America's Outsource Mortgage Program, engaged in transactions related to the securitization of mortgage loans on real property located within the State of Minnesota.

32.     The true names and capacities of Defendant Doe Corporations I – MMM are unknown to Plaintiffs.  Plaintiffs believe that, through discovery, the identity of Defendant Doe Corporations I – MMM will become known to Plaintiffs.

## FACTUAL STATEMENT

### A.     Minnesota Recording Statutes

#### 1.     Minnesota Law Requires Recordation of Certain Land Instruments in County Recorders' Offices

33.     To finance the purchase of real property, a borrower typically receives a "mortgage loan" from an originating lender.  A "mortgage loan" is composed of two separate land instruments: (1) a promissory note ("note"), which evidences the borrower's obligation to repay the loan, and (2) a security instrument ("mortgage"),[2] which evidence the originating lender's interest in the property to secure repayment of the note.

34.     A written document in the form of a land instrument is used to evidence each transaction in which an interest in the real property is assigned (i.e., conveyed, transferred, sold) to a new owner ("mortgage assignment" or "assignment").

35.     Land instruments, such as mortgages and mortgage assignments, must be recorded in the proper county recording office.  M.S.A. § 507.34 ("Every conveyance of real estate ***shall be recorded*** in the office of the county recorder of the county where such real estate is situated.") (emphasis added).

36.     County public officials (e.g., recorders and treasurers) are legally required to collect various fees (approximately $46.00 per mortgage and assignment) for certain mortgage-related land instruments presented for and entitled to be recorded.  M.S.A. § 357.18 ("The fees to be charged by the county recorder shall be and not exceed the following . . .").

---

[2] Mortgages and deeds of trust are collectively referred to herein as "mortgages."

### 2.     Minnesota's Public Land Recording System

37.     In Minnesota, county recorders' offices are run by county recorders who systematically record land documents to develop a public record of ownership over each parcel of land, as well as the debt attached to that land ("land ownership interest").  Each time a land ownership interest is assigned (i.e., transferred, conveyed, sold) to a new holder, a written document in the form of a land instrument – such as a mortgage assignment– is recorded in county recorders' offices to evidence the transaction.

38.     Minnesota recording laws require that county recorders maintain reliable public records with accurate chains of title, which are used for a multiplicity of purposes.  For instance, prospective purchasers of real property are able, and in some cases legally required, to investigate land ownership interests tied to a specific parcel of land.  Judicial actions involving real property often require reliance on public land records as evidence to resolve land ownership disputes.

39.     Reliable, accurate, publicly accessible land records are critical because the order in which land ownership interests are recorded determines the priority of the interest.  M.S.A. § 507.34 ("every such conveyance not so recorded shall be void as against any subsequent purchaser…whose conveyance is first duly recorded").  Thus, those who record their interests in the county land records are first to enjoy the protections provided by Minnesota statute in the form of a preference.

### B.     The Securitization of Minnesota Mortgage Loans

40.     Beginning in the 1990s, mortgage-backed securitizations became increasingly popular investments.  The process of securitizing mortgage loans begins with lender banks, who originate residential mortgage loans for sale to various commercial and investments banks.

Those financial institutions, in turn, sell the mortgage loans amongst themselves and then pool them into trusts to be issued to investors as mortgage-backed securities ("MBS").  Each "sale" requires an assignment of the mortgage loan.

41.    The securitization process involves mortgage loan sales that are evidenced in various contracts between the securitizing parties.  The securitization contracts explicitly state that the mortgage loans, which include the notes and mortgages, are sold, transferred, assigned, set over, deposited with and otherwise conveyed between the relevant parties.

42.    The process of securitizing mortgage loans is illustrated in the following diagram.

### The Securitization Process

**Securitizing a
Mortgage Loan**



43.     To securitize, banks such as Defendants must sell the mortgage loan (collectively, the mortgage and the note) a minimum of three times:

a.  First, mortgage originators may sell mortgage loans to warehouse lenders, who compile an inventory of varying types of mortgage loans – or such originators will convey the mortgage loans, either directly or through another series of transfers, to the entity initiating the securitization ("Sponsor").

b.  Second, Sponsors then sell their portfolio of mortgage loans to the "Sellers," who are entities, often affiliated with a large financial institution or investment bank, that initiate the securitization of their portfolio of mortgage loans.  (Sponsors may also act as Sellers.)

c.  Third, Sellers initiate securitization by selling (i.e., assigning, conveying, transferring) the mortgage loan pools to the "Depositor," typically pursuant to a mortgage loan purchase agreement.[3]

d.  Fourth, the Depositor, an intermediate entity between the Sponsor's commencement of the securitization and depositing the mortgage loans into the

---

[3] Parties to a mortgage loan purchase agreement are generally: (i) the Seller/Sponsor; (ii) Depositor; and (iii) the Guarantor.

trust, sells mortgage loans to a trustee ("Trustee"), acting on behalf of a trust ("Trust") pursuant to a pooling and servicing agreement ("PSA").[4] Formed by the PSA, a Trust is typically a "special purpose vehicle" that holds many pools of mortgage loans ("trust assets") for the eventual issuance of MBS for sale to investors. The MBS represent partial beneficial interests in the trust assets.

     e.     The Trustee, on behalf of the trust, administers the trust assets (mostly mortgage loan pools) and is considered by courts to be the legal owner of the trust assets.

44. When a trust is created, the Depositor, pursuant to the PSA, transfers all of its rights and interests in each mortgage loan and note into the trust. For example, a JPMorgan prospectus states that, "the Depositor will transfer to the trust all of its right, title and interest in and to each Mortgage Loan, the related mortgage note, mortgage, assignment of mortgage in recordable form to the Trustee…The assignments of mortgage are generally required to be recorded by or on behalf of the Depositor in the appropriate offices for real property records."

45. Thus, the typical life of a securitized mortgage entails *three or more assignments* – all of which are statutorily required to be recorded in the Minnesota county recording office in which the underlying property is located. Securitization of a mortgage does not vitiate the legal requirement to record each assignment of a mortgage.

**C.**     **The MERS Scheme: "Process Loans, Not Paperwork"**

     **1.**     **How Defendants Benefitted by <u>Failing</u> to Record Each and Every Mortgage and Assignment**

46. Financial institutions, including Defendants, profited during the housing boom of the last decade by purchasing mortgages from loan originators and, as described above, securitizing the mortgage loans for sale to investors, thereby generating fees for the banks while

---

[4] Parties to the PSA are generally: (i) the Sponsor; (ii) the Depositor; (iii) the Trustee; and (iv) various Servicers.

moving the mortgage loans—and their inherent risk of default—off their books.  The risk that the borrowers would default on the underlying mortgage loans was passed on to investors in the MBS.

47.     Investors in MBS's relied in part on offering documents that contained representations about the characteristics of the underlying mortgage loans.

48.     When selling a portfolio of mortgage loans to a Depositor, the Sponsor typically represents that each mortgage loan is a "first lien" on the underlying property.  For example, the Loan Purchase Agreement for New York Mortgage Trust 2006-1 Mortgage-Backed Pass-Through Certificates ("NYMT 2006-1") states that, "each Mortgage evidences a valid, subsisting, enforceable and perfected first lien on the related Mortgaged Property."  A "first lien" is the first mortgage loan recorded with the county recorder's office for a given property and takes priority over later-recorded liens, including second mortgages.

49.     Similarly, Depositors typically represent in the PSAs that each mortgage loan is subject to no prior liens.  For example, the NYMT 2006-1 PSA states that, "Immediately prior to the transfer by the Depositor to the Trust Estate of each Mortgage Loan, the Depositor had good and equitable title to each Initial Mortgage Loan (insofar as such title was conveyed to it by the Seller) subject to no prior lien, claim, participation interest, mortgage, security interest, pledge, charge or other encumbrance or other interest of any nature."

50.     Defendants were able to represent that the mortgage loans being sold to the trusts for purposes of securitization were first lien mortgages because the initial land instruments were recorded in county recorders' offices designating MERS as an "assignee" or "nominee," as described in detail below.

## 2.      How MERS Operates

51.      MERS maintains a private computer system that allows its users to, among other things, register and track changes in ownership interests in mortgages.

52.      Since 1997, over 65 million mortgages have been registered on MERS's system – three out of every five on the market.  Currently, nearly 5,600 participating MERS members ("MERS Members" or "Members") track roughly 31 million active residential mortgage loans on the MERS system.  MERS Members include a collection of banking and mortgage entities that ranges from local banks and investments banks to mortgage lenders and title insurers to approximately 3,000 mortgage servicers.

53.      Members pay MERS membership fees to register and track mortgage ownership interests and servicing rights on MERS's system.

54.      Members also pay MERS fees for each transaction conducted, such as assigning a mortgage to itself or to another MERS Member, identifying the mortgage's servicer, or using the MERS corporate seal.

55.      MERS does not itself originate, assign, service or invest in mortgages.

56.      Instead, MERS Members used (and continue to use) the "MERS" name to avoid recording in county recorders' offices each time a mortgage ownership interest was assigned – thereby avoiding the payment of attendant county recording fees.

## 3.      How MERS Members Place MERS in Land Instruments

57.      MERS Members typically record the initial land instrument, on which "MERS" is named, in county recorders' offices in one of two ways:

    a.      One way occurs when Members record an original mortgage on which

"MERS" is designated in a myriad of ways:  "MERS as mortgagee of record," "MERS as

nominee," "MERS as beneficiary," and even "MERS (solely as nominee for Lender) as beneficiary." MERS and its Members use the term "MERS as Original Mortgagee (MOM)" to describe this type of mortgage.

b. The second way occurs when Members record a mortgage assignment on which "MERS" is named. On such mortgage assignments, Members often purport to assign the mortgage and underlying debt either to: (i) MERS itself; or (ii) MERS on behalf of another Member.

58. MERS, however, admits that it does not draft or execute land instruments on behalf of itself or its Members. Rather, MERS instructs its Members to self-certify their employees (e.g., employees of the lending banks and mortgage servicers) as MERS "assistant secretaries" and/or MERS "vice-presidents" so the Members' staff can appear as though they work for MERS, even though they do not. To self-certify, Members' staff download certification forms directly off of MERS's website.

59. Once they self-certify, Members' staff draft and execute land instruments purporting to be "MERS assistant secretaries" and "MERS vice-presidents." County recorders, therefore, accept and record what facially appears to be land instruments signed by "MERS" employees, even though the documents were actually prepared by Members' staff.

60. Further, MERS Members contend that, as long as mortgage ownership interests are assigned to other MERS Members, they are not required to record each mortgage assignment in county recorders' offices because MERS acts on behalf of both the assignor and assignee (representing both MERS Members simultaneously).

### 4.    How MERS Members Failed to Record Mortgage Assignments

61.     MERS was intended to improve its Members' profitability in the primary and secondary mortgage markets, and facilitate securitization of mortgages, through the rapid assignment of mortgages between financial institutions – while avoiding:  (i) recording each time the mortgages are assigned in county recorders' offices, and (ii) paying the attendant county recording fees.

62.     While admitting they do not record assignments in county recorders' offices, MERS Members also have routinely failed to register assignments on MERS's private system.

63.     Thus, MERS Members often only record a mortgage assignment (regardless of how many times the mortgage had been assigned prior) in county recorders' offices when they are attempting to assign the mortgage from MERS.  This generally occurs when MERS Members seek to initiate a terminating event (e.g., to foreclose when the mortgage is in default, or to release when the mortgage is refinanced or satisfied).

64.     By failing to record all mortgage assignments, MERS Members break a mortgage's chain of title, creating a "gap" in county public land records.

### 5.    How Defendants Failed to Record All MERS and Non-MERS Mortgages and Assignments

65.     As MERS Members, Defendants would often assign mortgage loans between one another by recording an assignment to MERS once, as a placeholder in land records, in order to receive priority of their ownership interests in that mortgage loan despite failing to record multiple subsequent assignments.

66.     However, Defendants also securitized non-MERS mortgage loans (i.e., non-MERS land instruments recorded in county land records) – and still failed to record the multiple subsequent mortgage assignments in the county land recorders' offices.

67.     Where the typical life of a securitized mortgage entails at least three assignments, Defendants violated Minnesota law by failing to record each mortgage assignment in the proper Minnesota county land records.  Defendants' failure to record such mortgage assignments not only deprived Minnesota counties of statutory recording fees, but created "gaps" in the property's chain of title making it difficult if not impossible to determine the financial institution that actually held the interest in the mortgage loan.

**D.      Specific Examples of Broken Chains of Title from Failing to Record**

68.     As demonstrated below, the land instruments recorded in the Ramsey County and Hennepin County recorders' offices, however, only provide part of the picture.  Minnesota county land records no longer provide complete chains of title because Defendants and other financial institutions purposely failed to record all mortgage assignments that Defendants and others made during securitization.

69.     The following examples show broken chains of title throughout Ramsey County and Hennepin County's land records that were directly and knowingly caused by Defendants' failure to prepare and record all mortgages and assignments required by Minnesota law.

**PLAINTIFF RAMSEY COUNTY**

**Example 1: 1014 Lawson Avenue East, Saint Paul, Minnesota 55106**

**Recorded Mortgage and Assignment in the Ramsey County Recorder's Office**

70.     On February 16, 2005, a Ramsey County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Novelle Financial Services.  To do so, the homeowner executed a note in the amount of $136,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to

Novelle Financial Services on real property located at 1014 Lawson Avenue East, Saint Paul, Minnesota 55106 ("Mortgage").

71.     On February 28, 2005, the Mortgage was recorded at the Ramsey County Recorder's Office.

### Unrecorded Mortgage Assignments Made During Securitization

72.     On or about March 30, 2005 the homeowner's Mortgage Loan was securitized by Defendants JP Morgan Chase Bank, N.A., Morgan Stanley, and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Morgan Stanley ABS Capital I Inc. Trust (the "Morgan Stanley Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the Morgan Stanley Trust.  In turn, the Morgan Stanley Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Morgan Stanley ABS Capital I, Inc., Trust 2005-HE2, Prospectus Supplement.

73.     Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Morgan Stanley Trust.

*Step 1*:  Originating Lender Novelle Financial Services assigned the Mortgage Loan to an Unknown Seller[5].



---

[5] The Morgan Stanley ABS Capital I Inc. Trust 2005-HE2 Prospectus lists five possible sellers (Option One Mortgage Corporation, Decision One Mortgage Company LLC, NC Capital Corporation, Accredited Home Lenders, Inc., and Aames Capital Corporation).  However, because the assignment of the Mortgage Loan from the originating lender to the seller was not recorded it is impossible to definitively ascertain the identity of the seller.

*Step 2*:  The Unknown Seller then assigned the Mortgage Loan to a depositor, Morgan

Stanley ABS Capital I, Inc.



*Step 3*:  Depositor Morgan Stanley ABS Capital I, Inc. finally assigned the Mortgage

Loan to a trustee, JP Morgan Chase Bank, N.A., on behalf of the Morgan Stanley ABS

Capital I Inc. Trust 2005-HE2.



**Recorded Assignment in the Ramsey County Recorder's Office**

74.     On March 15, 2006, Matt Parsons, acting as "Assistant Secretary" of Novelle

Financial Services, executed an Assignment of Mortgage to "JP Morgan Chase Bank, N.A., as

Trustee on Behalf of the Certificate Holders of Morgan Stanley ABS Capital I, Inc., Trust 2005-

HE2."  On June 2, 2006, the Assignment of Mortgage was recorded in the Ramsey County

Recorder's Office.

75.     Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage,

***only 1 assignment was ever recorded*** in the Ramsey County Recorder's Office.

**Example 2: 4287 Evergreen Drive, Vadnais Heights, Minnesota 55127**

**Recorded Mortgage and Assignment in the Ramsey County Recorder's Office**

76.　　On April 16, 2007, a Ramsey County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Washington Mutual Bank.  To do so, the homeowner executed a note in the amount of $135,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Washington Mutual on real property located at 4287 Evergreen Drive, Vadnais Heights, Minnesota 55127 ("Mortgage").

77.　　On April 26, 2007, the Mortgage was recorded at the Ramsey County Recorder's Office.

**Unrecorded Mortgage Assignments Made During Securitization**

78.　　On or about June 13, 2007 the homeowner's Mortgage Loan was securitized by Defendant Citibank, N.A. and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the WaMu Series 2007-HE4 Trust (the "WaMu Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the WaMu Trust.  In turn, the WaMu Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the WaMu Asset-Backed Certificates, Series 2007-HE4, Prospectus Supplement.

79.　　Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 2 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the WaMu Trust.

　　*Step 1*:  Originating Lender and Sponsor Washington Mutual Bank assigned the
　　Mortgage Loan to a depositor, WaMu Asset Acceptance Corp.



*Step 2*:  Depositor WaMu Asset Acceptance Corp. finally assigned the Mortgage Loan to

a trustee, Citibank, N.A., on behalf of the WaMu Series 2007-HE4 Trust.



### Recorded Assignment in the Ramsey County Recorder's Office

80.     On May 16, 2008, Craig Hanlon, acting as "Assistant Vice President" of

Washington Mutual Bank, executed an Assignment of Mortgage to "Citibank, N.A. as trustee for

WaMu Series 2007-HE4 Trust."  On May 23, 2008, the Assignment of Mortgage was recorded

in the Ramsey County Recorder's Office.

81.     Therefore, despite having effectuated ***at least 2 assignments*** of the Mortgage,

***only 1 assignment was ever recorded*** in the Ramsey County Recorder's Office.

### Example 3: 1021 Minnehaha Ave East, Saint Paul, Minnesota 55106

### Recorded Mortgage and Assignment in the Ramsey County Recorder's Office

82.     On September 11, 2006, a Ramsey County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, Pillar Mortgage Services Corporation.  To do so, the

homeowner executed a note in the amount of $180,000 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to

Pillar Mortgage on real property located at 1021 Minnehaha Ave East, Saint Paul, Minnesota 55106 ("Mortgage").

a.     MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

83.     On September 21, 2006, the Mortgage was recorded at the Ramsey County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

84.     On or about January 31, 2007 the homeowner's Mortgage Loan was securitized by Defendants LaSalle Bank National Association (predecessor by merger to Defendant Bank of America, N.A.), Goldman Sachs, and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the GSAMP Trust 2007-H1 (the "GSAMP Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the GSAMP Trust.  In turn, the GSAMP Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Mortgage Pass-Through Certificates, Series 2007-H1, Prospectus Supplement.

85.     Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the GSAMP Trust.

*Step 1*:  Originating Lender Pillar Mortgage Services Corporation assigned the Mortgage Loan to a sponsor, Goldman Sachs Mortgage Company.



*Step 2*:  Sponsor Goldman Sachs Mortgage Company then assigned the Mortgage Loan to a depositor, GS Mortgage Securities Corp.



*Step 3*:  Depositor GS Mortgage Securities Corp. finally assigned the Mortgage Loan to a trustee, LaSalle Bank, National Association (predecessor by merger to Bank of America, N.A.), on behalf of the GSAMP Trust 2007-H1.



**Recorded Assignment in the Ramsey County Recorder's Office**

86.    On May 8, 2009, John Crandall, acting as "Vice President" of MERS, executed an Assignment of Mortgage to "Bank of America, National Association as successor by merger to LaSalle Bank National Association, as trustee…[for] GSAMP Trust 2007-H1."  On May 20, 2009 the Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

87.    Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage, ***only 1 assignment was ever recorded*** in the Ramsey County Recorder's Office.

### Example 4: 1265 Bridle Path Ct, White Bear Lake, Minnesota 55110

**Recorded Mortgage and Assignment in the Ramsey County Recorder's Office**

88.     On August 8, 2006, a Ramsey County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, Countrywide Home Loans, Inc.  To do so, the

homeowner executed a note in the amount of $155,700 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to

Countrywide Home Loans, Inc. on real property located at 1265 Bridle Path Ct, White Bear

Lake, Minnesota 55110 ("Mortgage").

> a.     MERS also appears on the Mortgage.  First identifying "*MERS [a]s a*
>
> *separate corporation acting as the nominee for the Lender* and Lender's successors and
>
> assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security
>
> Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and
>
> as the lender itself.

89.     On August 17, 2006, the Mortgage was recorded at the Ramsey County

Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

90.     On or about September 29, 2006 the homeowner's Mortgage Loan was

securitized by Defendant The Bank of New York, Countrywide Home Loans, Inc. (predecessor

by merger to Defendant Bank of America, Corp.), and other financial institutions.  To securitize,

Defendants and others entered into a PSA, in which a trust was formed, the CWABS Asset-

Backed Certificates Trust 2006-19 (the "CWABS Trust"), and which memorialized their many

assignments of pooled mortgage loans ultimately placed in the CWABS Trust.  In turn, the

CWABS Trust held the pooled mortgage loans as collateral backing the securities issued and

sold to investors, pursuant to the Asset-Backed Certificates, Series 2006-19, Prospectus Supplement.

91.     Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 2 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the CWABS Trust.

*Step 1*:  Originating Lender and Sponsor Countrywide Home Loans, Inc. assigned the Mortgage Loan to a depositor, CWABS, Inc.



*Step 2*:  Depositor CWABS, Inc. finally assigned the Mortgage Loan to a trustee, The Bank of New York on behalf of CWABS Trust 2006-19.



**Recorded Assignment in the Ramsey County Recorder's Office**

92.     On March 13, 2008, Mark Bishop and Carrie A. Hoover, acting as "Vice Presidents" of MERS, executed an Assignment of Mortgage to "The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Asset-backed Certificates, Series 2006-19."  On May 1, 2006 the Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

93.     Therefore, despite having effectuated **at least 2 assignments** of the Mortgage,
**only 1 assignment was ever recorded** in the Ramsey County Recorder's Office.

### Example 6: 939 Scheffer Ave, Saint Paul, Minnesota 55102

### Recorded Mortgage and Assignment in the Ramsey County Recorder's Office

94.     On December 9, 2005, a Ramsey County homeowner took out a mortgage loan
("Mortgage Loan") with originating lender, Argent Mortgage Company, LLC.  To do so, the
homeowner executed a note in the amount of $194,000 ("Note") in exchange for the loan and, to
secure the Note, the homeowner executed a security instrument in the form of a mortgage to
Argent Mortgage Company on real property located at 939 Scheffer Ave, Saint Paul, Minnesota
55102 ("Mortgage").

95.     On December 20, 2005, the Mortgage was recorded at the Ramsey County
Recorder's Office.

### Unrecorded Mortgage Assignments Made During Securitization

96.     On or about February 27, 2006 the homeowner's Mortgage Loan was securitized
by Defendant Deutsche Bank National Trust Company and other financial institutions.  To
securitize, Defendants and others entered into a PSA, in which a trust was formed, the Argent
Securities Trust 2006-W2 (the "Argent Trust"), and which memorialized their many assignments
of pooled mortgage loans ultimately placed in the Argent Trust.  In turn, the Argent Trust held
the pooled mortgage loans as collateral backing the securities issued and sold to investors,
pursuant to the Argent Securities Inc., Loan Asset-Backed Pass-Through Certificates, Series
2006-W2, Prospectus Supplement.

97.     Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Argent Trust.

*Step 1*:  Originating Lender Argent Mortgage Company, LLC assigned the Mortgage Loan to a seller, Ameriquest Mortgage Company.



*Step 2*:  Seller Ameriquest Mortgage Company then assigned the Mortgage Loan to a depositor, Argent Securities Inc.



*Step 3*:  Depositor Argent Securities Inc. finally assigned the Mortgage Loan to a trustee, Deutsche Bank National Trust Company, on behalf of the Argent Securities Trust 2006-W2.



**Recorded Assignment in the Ramsey County Recorder's Office**

98.     On October 26, 2007, Tamara Price, acting as "Vice-President" of Argent Mortgage Company, LLC, executed an Assignment of Mortgage to "Deutsche Bank National

30

Trust Company, as Trustee of Argent Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2006-W2." On November 7, 2007, the Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

99.     Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Ramsey County Recorder's Office.

### Example 7: 295 Marshall Avenue, Saint Paul, Minnesota 55104

**Recorded Mortgage and Assignment in the Ramsey County Recorder's Office**

100.     On May 25, 2006, a Ramsey County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Argent Mortgage Company, LLC. To do so, the homeowner executed a note in the amount of $253,500 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Argent Mortgage Company on real property located at 295 Marshall Avenue, Saint Paul, Minnesota 55104 ("Mortgage").

101.     On June 2, 2006, the Mortgage was recorded at the Ramsey County Recorder's Office.

**Unrecorded Mortgage Assignments Made During Securitization**

102.     On or about March 9, 2007 the homeowner's Mortgage Loan was securitized by Defendants U.S. Bank, N.A., Citigroup, Inc., and other financial institutions. To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Citigroup Mortgage Loan Trust, 2007-AMC1 (the "Citigroup Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the Citigroup Trust. In turn, the Citigroup Trust held the pooled mortgage loans as collateral backing the securities issued and

sold to investors, pursuant to the Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1, Prospectus Supplement.

103.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Citigroup Trust.

*Step 1*:  Originating Lender Argent Mortgage Company, LLC assigned the Mortgage Loan to a sponsor, Citigroup Global Markets Reality Corp.



*Step 2*:  Sponsor Citigroup Global Markets Reality Corp. then assigned the Mortgage Loan to a depositor, Citigroup Mortgage Loan Trust Inc.



*Step 3*:  Depositor Citigroup Mortgage Loan Trust Inc. finally assigned the Mortgage Loan to a trustee, U.S. Bank, N.A., on behalf of the Citigroup Mortgage Loan Trust 2007-AMC1.



### Recorded Assignment in the Ramsey County Recorder's Office

104.    On May 3, 2007, Tamara Price, acting as "Vice-President" of Argent Mortgage Company, LLC, executed an Assignment of Mortgage to "U.S. Bank, National Association, as trustee on behalf of certificate holders, Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1."  On May 9, 2007, the Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

105.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Ramsey County Recorder's Office.

### Example 8: 1532 Concordia Ave, Saint Paul, Minnesota 55104

### Recorded Mortgage and Assignment in the Ramsey County Recorder's Office

106.    On March 3, 2005, a Ramsey County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Finance America, LLC.  To do so, the homeowner executed a note in the amount of $162,900 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Finance America LLC on real property located at 1532 Concordia Ave, Saint Paul, Minnesota 55104 ("Mortgage").

   a.    MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

107.    On March 24, 2005, the Mortgage was recorded at the Ramsey County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

108.    On or about April 28, 2005 the homeowner's Mortgage Loan was securitized by Defendants HSBC Bank USA, N.A., Deutsche Bank National Trust Company, and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the ACE Securities Corp. Home Equity Loan Trust 2005-HE3 (the "ACE Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the ACE Trust.  In turn, the ACE Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE3 Asset Backed Pass-Through Certificates, Prospectus Supplement.

109.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the ACE Trust.

*Step 1*:  Originating Lender Finance America LLC assigned the Mortgage Loan to a seller, DB Structured Products, Inc.



*Step 2*:  Seller DB Structured Products, Inc. then assigned the Mortgage Loan to a depositor, Ace Securities Corp.



*Step 3*:  Depositor Ace Securities Corp. finally assigned the Mortgage Loan to a trustee,

HSBC Bank USA, N.A., on behalf of the ACE Securities Corp 2005-HE3 Trust.



**3rd** Assignment of the
Mortgage & Note

| Depositor Ace Securities Corp. | → | Trustee HSBC Bank USA, N.A. |

**Recorded Assignment in the Ramsey County Recorder's Office**

110.     On March 8, 2006, Scott Anderson, acting as "Assistant Vice President" of

MERS, executed an Assignment of Mortgage to "HSBC Bank USA, N.A. as trustee for the

registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE3, Asset

Backed Pass-Through Certificates."  On July 31, 2006, the Assignment of Mortgage was

recorded in the Ramsey County Recorder's Office.

111.     Therefore, despite having effectuated *at least 3 assignments* of the Mortgage,

*only 1 assignment was ever recorded* in the Ramsey County Recorder's Office.

## Example 9: 1193 Selby Ave, Saint Paul, Minnesota 55104

**Recorded Mortgage and Assignment in the Ramsey County Recorder's Office**

112.     On May 11, 2005, a Ramsey County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, Argent Mortgage Company, LLC.  To do so, the

homeowner executed a note in the amount of $170,000 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to

Argent Mortgage Company on real property located at 1193 Selby Ave, Saint Paul, Minnesota

55104 ("Mortgage").

113.     On May 31, 2005, the Mortgage was recorded at the Ramsey County Recorder's

Office.

**Unrecorded Mortgage Assignments Made During Securitization**

114.    On or about December 28, 2005 the homeowner's Mortgage Loan was securitized by Defendant Wells Fargo Bank, N.A. and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Merrill Lynch Mortgage Investors Trust (the "MLMI Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the MLMI Trust.  In turn, the MLMI Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the MLMI Mortgage Loan Asset-Backed Certificates, Series 2005-HE3, Prospectus Supplement.

115.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the MLMI Trust.

*Step 1*:  Originating Lender Argent Mortgage Company, LLC (subsidiary of parent company Ameriquest Mortgage Company) assigned the Mortgage Loan to a seller, Merrill Lynch Mortgage Lending, Inc.



*Step 2*:  Seller Merrill Lynch Mortgage Lending, Inc. then assigned the Mortgage Loan to a depositor, Merrill Lynch Mortgage Investors, Inc.



*Step 3*:  Depositor Merrill Lynch Mortgage Investors, Inc. finally assigned the Mortgage

Loan to a trustee, Wells Fargo Bank, N.A., on behalf of the MLMI Trust 2005-HE3.



**3rd** Assignment of the Mortgage & Note

Depositor Merrill Lynch Mortgage Investors, Inc.

Trustee Wells Fargo Bank, N.A.

### Recorded Assignment in the Ramsey County Recorder's Office

116.     On May 16, 2005, Sandri Simmons, acting as "Assistant Secretary" of Argent

Mortgage Company, LLC, executed an Assignment of Mortgage to "Wells Fargo Bank, National

Association as Trustee for the MLMI Trust Series 2005-HE3."  On April 16, 2006, the

Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

117.     Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage,

***only 1 assignment was ever recorded*** in the Ramsey County Recorder's Office.

### <u>Example 10: 1710 Field Ave, Saint Paul, Minnesota 55116</u>

### Recorded Mortgage and Assignment in the Ramsey County Recorder's Office

118.     On November 1, 2005, a Ramsey County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, Encore Credit Corp.  To do so, the homeowner

executed a note in the amount of $183,920 ("Note") in exchange for the loan and, to secure the

Note, the homeowner executed a security instrument in the form of a mortgage to Encore Credit

Corp. on real property located at 1710 Field Ave, Saint Paul, Minnesota 55116 ("Mortgage").

a.      MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

119.    On November 28, 2005, the Mortgage was recorded at the Ramsey County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

120.    On or about February 28, 2006 the homeowner's Mortgage Loan was securitized by Defendant U.S. Bank, N.A. and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the C-BASS 2006-CB2 Trust (the "C-BASS Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the C-BASS Trust.  In turn, the C-BASS Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB2, Prospectus Supplement.

121.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the C-BASS Trust.

*Step 1*:  Originating Lender Encore Credit Corp. assigned the Mortgage Loan to a seller, Credit-Based Asset Servicing and Securitization, LLC.



*Step 2*:  Seller Credit-Based Asset Servicing and Securitization, LLC then assigned the Mortgage Loan to a depositor, Bond Securitization, LLC.

\



*Step 3*:  Depositor Bond Securitization, LLC finally assigned the Mortgage Loan to a trustee, U.S. Bank, N.A., on behalf of the C-BASS 2006-CB2 Trust.



**Recorded Assignment in the Ramsey County Recorder's Office**

122.    On May 22, 2007, Scott Anderson, acting as "Assistant Vice President" of MERS, executed an Assignment of Mortgage to "U.S. Bank, N.A. as trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB2."  On June 7, 2007, the Assignment of Mortgage was recorded in the Ramsey County Recorder's Office.

123.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Ramsey County Recorder's Office.

**PLAINTIFF HENNEPIN COUNTY**

**Example 1: 5697 Green Circle Drive #321, Minnetonka, Minnesota 55343**

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

124.     On March 11, 2002, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Aegis Mortgage Corporation d/b/a UC Lending.  To do so, the homeowner executed a note in the amount of $104,500 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Aegis Mortgage Corporation on real property located at 5697 Green Circle Drive #321, Minnetonka, Minnesota 55343 ("Mortgage").

        a.     MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

125.     On April 4, 2002, the Mortgage was recorded at the Hennepin County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

126.     On or about November 27, 2002 the homeowner's Mortgage Loan was securitized by Defendant Wells Fargo Bank, N.A. and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Structured Asset Securities Corporation Trust 2002-BC1 (the "SASC Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the SASC Trust.  In turn, the SASC Trust held the pooled mortgage loans as collateral backing the securities issued and sold to

40

investors, pursuant to the SASC Mortgage Pass-Through Certificates, Series 2002-BC1, Prospectus Supplement.

127.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the SASC Trust.

*Step 1*:  Originating Lender Aegis Mortgage Corporation assigned the Mortgage Loan to a seller, Lehman Brothers Bank, FSB.



*Step 2*:  Seller Lehman Brothers Bank, FSB then assigned the Mortgage Loan to a depositor, Structured Asset Securities Corporation.



*Step 3*:  Depositor Structured Asset Securities Corporation finally assigned the Mortgage Loan to a trustee, Wells Fargo Bank, N.A., on behalf of the SASC Trust 2002-BC1.



41

**Recorded Assignment in the Hennepin County Recorder's Office**

128.     On September 19, 2005, Michelle Anderson, acting as "Assistant Secretary" of MERS, executed an Assignment of Mortgage to "Wells Fargo Bank, National Association as Trustee for Structured Asset Securities Corporation Trust 2002-BC1."  On October 5, 2005, the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

129.     Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

**Example 2: 10305 Indiana Ave N, Brooklyn Park, Minnesota 55443**

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

130.     On June 20, 2006, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Countrywide Home Loans, Inc.  To do so, the homeowner executed a note in the amount of $448,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Countrywide Home Loans on real property located at 10305 Indiana Ave N, Brooklyn Park, Minnesota 55443 ("Mortgage").

a.     MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

131.     On July 31, 2006, the Mortgage was recorded at the Hennepin County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

132.     On or about July 31, 2006 the homeowner's Mortgage Loan was securitized by Defendant Citibank, N.A., Countrywide Home Loans Inc. (predecessor-by-merger to Defendant Bank of America, Corp.), and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Bear Stearns ALT-A Trust 2006-5 (the "Bear Stearns Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the Bear Stearns Trust.  In turn, the Bear Stearns Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-5, Prospectus Supplement.

133.     Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Bear Stearns Trust.

*Step 1*:  Originating Lender Countrywide Home Loans, Inc. assigned the Mortgage Loan to a sponsor, EMC Mortgage Corporation.



*Step 2*:  Sponsor EMC Mortgage Corporation then assigned the Mortgage Loan to a depositor, Structured Asset Mortgage Investments II Inc.



43

*Step 3*:  Depositor Structured Asset Mortgage Investments II Inc. finally assigned the

Mortgage Loan to a trustee, Citibank, N.A., on behalf of the Bear Sterns ALT-A Trust

2006-5.



**Recorded Assignment in the Hennepin County Recorder's Office**

134.    On September 4, 2009, Steven H. Burns, acting as "Vice-President" of MERS,

executed an Assignment of Mortgage to "Citibank, N.A. as Trustee for the Holders of Bear

Stearns ALT-A Trust 2006-5."  On October 14, 2009, the Assignment of Mortgage was recorded

in the Hennepin County Recorder's Office.

135.    Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage,

***only 1 assignment was ever recorded*** in the Hennepin County Recorder's Office.

### Example 3: 4297 Cottonwood Lane, Plymouth, Minnesota 55441

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

136.    On October 14, 2002, a Hennepin County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, First National Bank of Arizona.  To do so, the

homeowner executed a note in the amount of $399,000 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to First

National Bank of Arizona on real property located at 4297 Cottonwood Lane, Plymouth,

Minnesota 55441 ("Mortgage").

      a.        MERS also appears on the Mortgage.  First identifying "*MERS [a]s a*

*separate corporation acting as the nominee for the Lender* and Lender's successors and

assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security

Instrument." Thus, the Mortgage identifies MERS as both the nominee for the lender and

as the lender itself.

137. On April 28, 2003, the Mortgage was recorded at the Hennepin County

Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

### Unrecorded Mortgage Assignments Made During Securitization

138. On or about December 23, 2002 the homeowner's Mortgage Loan was securitized

by Defendant JP Morgan Chase Bank and other financial institutions. To securitize, Defendants

and others entered into a PSA, in which a trust was formed, the C-BASS Mortgage Loan 2002-

CB6 (the "C-BASS Trust"), and which memorialized their many assignments of pooled

mortgage loans ultimately placed in the C-BASS Trust. In turn, the C-BASS Trust held the

pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant

to the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2002-CB6, Prospectus

Supplement.

139. Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note

and Mortgage) *was assigned at least 3 times* during securitization. The steps below detail each

assignment of the Mortgage Loan, from initiation to its placement in the C-BASS Trust.

*Step 1*: Originating Lender First National Bank of Arizona assigned the Mortgage Loan

to a seller, Credit-Based Asset Servicing and Securitization LLC.



*Step 2*:  Seller Credit-Based Asset Servicing and Securitization LLC then assigned the

Mortgage Loan to a depositor, Financial Asset Securities Corp.



*Step 3*:  Depositor Financial Asset Securities Corp. finally assigned the Mortgage Loan to

a trustee, JP Morgan Chase Bank, on behalf of the C-BASS Mortgage Loan 2002-CB6

Trust.



### Recorded Assignment in the Hennepin County Recorder's Office

140.     On April 27, 2005, Lela Drouen, acting as "Assistant Secretary" of MERS,

executed an Assignment of Mortgage to "JP Morgan Chase Bank, as Trustee under the Pooling

and Servicing Agreement."  On May 26, 2005, the Assignment of Mortgage was recorded in the

Hennepin County Recorder's Office.

141.     Therefore, despite having effectuated *at least 3 assignments* of the Mortgage,

*only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

### Example 4: 2447 16th Avenue South, Minneapolis, Minnesota 55404

### Recorded Mortgage and Assignment in the Hennepin County Recorder's Office

142.     On June 18, 2003, a Hennepin County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, BNC Mortgage, Inc.  To do so, the homeowner

executed a note in the amount of $116,250 ("Note") in exchange for the loan and, to secure the

Note, the homeowner executed a security instrument in the form of a mortgage to BNC

Mortgage Inc. on real property located at 2447 16th Avenue South, Minneapolis, Minnesota

55404 ("Mortgage").

       a.     MERS also appears on the Mortgage.  First identifying "*MERS [a]s a*

*separate corporation acting as the nominee for the Lender* and Lender's successors and

assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security

Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and

as the lender itself.

    143.    On August 1, 2003, the Mortgage was recorded at the Hennepin County

Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

### Unrecorded Mortgage Assignments Made During Securitization

    144.    On or about September 26, 2003 the homeowner's Mortgage Loan was

securitized by LaSalle Bank, National Association (predecessor by merger to Defendant Bank of

America, N.A.) and other financial institutions.  To securitize, Defendants and others entered

into a PSA, in which a trust was formed, the Structured Asset Investment Loan Trust 2003-BC10

(the "SAIL Trust"), and which memorialized their many assignments of pooled mortgage loans

ultimately placed in the SAIL Trust.  In turn, the SAIL Trust held the pooled mortgage loans as

collateral backing the securities issued and sold to investors, pursuant to the Mortgage Pass-

Through Certificates, Series 2003-BC10, Prospectus Supplement.

    145.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note

and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each

assignment of the Mortgage Loan, from initiation to its placement in the SAIL Trust.

*Step 1*:  Originating Lender BNC Mortgage Inc. assigned the Mortgage Loan to a seller, Lehman Brothers Holdings Inc.



*Step 2*:  Seller Lehman Brothers Holdings Inc. then assigned the Mortgage Loan to a depositor, Structured Asset Securities Corporation.



*Step 3*:  Depositor Structured Asset Securities Corporation finally assigned the Mortgage Loan to a trustee, LaSalle Bank, National Association (predecessor by merger to Bank of America, N.A.), on behalf of the Structured Asset Investment Loan Trust 2003-BC10.



**Recorded Assignment in the Hennepin County Recorder's Office**

146.    On December 3, 2003, Kathy Milchak, acting as "Assistant Secretary" of MERS, executed an Assignment of Mortgage to "LaSalle Bank National Association, as Trustee of the Structured Asset Investment Loan Trust, 2003-BC10."  On April 2, 2004, the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

147.     Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage, ***only 1 assignment was ever recorded*** in the Hennepin County Recorder's Office.

### Example 5: 806 Queen Ave N, Minneapolis, Minnesota 55411

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

148.     On August 31, 2006, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Argent Mortgage Company, LLC.  To do so, the homeowner executed a note in the amount of $195,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Argent Mortgage Company on real property located at 806 Queen Ave N, Minneapolis, Minnesota 55411 ("Mortgage").

149.     On October 25, 2006, the Mortgage was recorded at the Hennepin County Recorder's Office.

**Unrecorded Mortgage Assignments Made During Securitization**

150.     On or about March 9, 2007 the homeowner's Mortgage Loan was securitized by Defendants U.S. Bank, N.A., Citigroup Inc., and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Citigroup Mortgage Loan Trust, 2007-AMC1 (the "Citigroup Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the Citigroup Trust.  In turn, the Citigroup Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1, Prospectus Supplement.

151.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Citigroup Trust.

*Step 1*:  Originating Lender Argent Mortgage Company, LLC assigned the Mortgage Loan to a sponsor, Citigroup Global Markets Reality Corp.



*Step 2*:  Sponsor Citigroup Global Markets Reality Corp. then assigned the Mortgage Loan to a depositor, Citigroup Mortgage Loan Trust Inc.



*Step 3*:  Depositor Citigroup Mortgage Loan Trust Inc. finally assigned the Mortgage Loan to a trustee, U.S. Bank, N.A., on behalf of the Citigroup Mortgage Loan Trust 2007-AMC1.



**Recorded Assignment in the Hennepin County Recorder's Office**

152.    On September 4, 2007, David Sunlin, acting as "Vice-President" of Argent

Mortgage Company, LLC, executed an Assignment of Mortgage to "U.S. Bank, National

Association, as trustee on behalf of certificate holders, Citigroup Mortgage Loan Trust Inc.,

Asset-Backed Pass-Through Certificates, Series 2007-AMC1."  On September 11, 2007, the

Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

153.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage,

*only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

## Example 6: 2724 Cedar Avenue South, Minneapolis, Minnesota 55407

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

154.    On September 25, 2002, a Hennepin County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, New Century Mortgage Company.  To do so, the

homeowner executed a note in the amount of $146,000 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to

New Century Mortgage Company on real property located at 2724 Cedar Avenue South,

Minneapolis, Minnesota 55407 ("Mortgage").

155.    On October 30, 2002, the Mortgage was recorded at the Hennepin County

Recorder's Office.

**Unrecorded Mortgage Assignments Made During Securitization**

156.    On or about January 28, 2003 the homeowner's Mortgage Loan was securitized

by Defendant Deutsche Bank National Trust Company, and other financial institutions.  To

securitize, Defendants and others entered into a PSA, in which a trust was formed, the Morgan

Stanly Dean Witter Capital I Inc. Trust 2003-NC1 (the "Morgan Stanley Trust"), and which

memorialized their many assignments of pooled mortgage loans ultimately placed in the Morgan Stanley Trust.  In turn, the Morgan Stanley held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Mortgage Pass-Through Certificates, Series 2003-NC1, Prospectus Supplement.

157.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the Morgan Stanley Trust.

*Step 1*:  Originating Lender New Century Mortgage Corporation assigned the Mortgage Loan to a seller, NC Capital Corporation.



*Step 2*:  Seller NC Capital Corporation then assigned the Mortgage Loan to a depositor, Morgan Stanley Dean Witter Capital I Inc.



*Step 3*:  Depositor Morgan Stanley Dean Witter Capital I Inc. finally assigned the Mortgage Loan to a trustee, Deutsche Bank National Trust Company, on behalf of the Morgan Stanley Dean Witter Capital I Inc. Trust 2003-NC1.



**Recorded Assignment in the Hennepin County Recorder's Office**

158.    On April 23, 2003, Scott Anderson, acting as "Sr. Vice-President" of Ocwen Federal Bank FSB Attorney-In-Fact for New Century Mortgage Corporation, executed an Assignment of Mortgage to "Deutsche Bank National Trust Company, Trustee for the Registered Holders of Morgan Stanley Dean Witter Capital I Inc. Trust 2003-NC1."  On May 8, 2003, the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

159.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

## Example 7: 1200-1210 Douglas Road, Golden Valley, Minnesota 55422

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

160.    On December 23, 2005, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, H&R Block Mortgage Corporation.  To do so, the homeowner executed a note in the amount of $240,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to H&R Block Mortgage on real property located at 1200-1210 Douglas Road, Golden Valley, Minnesota 55422 ("Mortgage").

161.    On January 20, 2006, the Mortgage was recorded at the Hennepin County Recorder's Office.

**Unrecorded Mortgage Assignments Made During Securitization**

162.    On or about May 25, 2006 the homeowner's Mortgage Loan was securitized by Defendants HSBC Bank USA, N.A., Deutsche Bank National Trust Company, and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the ACE Securities Corp. Home Equity Loan Trust, Series 2006-OP1 (the "ACE

Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the ACE Trust.  In turn, the ACE Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the ACE Securities Corp. Home Equity Loan Trust, 2006-OP1 Asset-Backed Pass-Through Certificates  Prospectus Supplement.

163.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the ACE Trust.

*Step 1*:  Originator Option One Mortgage Corporation (Subsidiary of the originating lender H&R Block Mortgage Corporation) assigned the Mortgage Loan to a sponsor, DB Structured Products, Inc.



*Step 2*:  Sponsor DB Structured Products Inc. then assigned the Mortgage Loan to a depositor, ACE Securities Corp.



*Step 3*:  Depositor ACE Securities Corp. finally assigned the Mortgage Loan to a trustee,

HSBC Bank USA, N.A., on behalf of the ACE Securities Corp. Home Equity Loan Trust

2006-OP1.



**Recorded Assignment in the Hennepin County Recorder's Office**

164.    On December 5, 2006, Tracy M. Solomon, acting as "Assistant Secretary" of

Option One Mortgage Corporation, executed an Assignment of Mortgage to "HSBC Bank USA,

as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-OP1."  On December

12, 2006, the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

165.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage,

*only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

### Example 8: 6016 Washburn Ave S, Minneapolis, Minnesota 55410

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

166.    On March 15, 2005, a Hennepin County homeowner took out a mortgage loan

("Mortgage Loan") with originating lender, Maribella Mortgage, LLC.  To do so, the

homeowner executed a note in the amount of $283,500 ("Note") in exchange for the loan and, to

secure the Note, the homeowner executed a security instrument in the form of a mortgage to

Maribella Mortgage on real property located at 6016 Washburn Ave S, Minneapolis, Minnesota

55410 ("Mortgage").

a.    MERS also appears on the Mortgage.  First identifying "*MERS [a]s a*

*separate corporation acting as the nominee for the Lender* and Lender's successors and

assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

167.    On April 12, 2005, the Mortgage was recorded at the Hennepin County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

### Unrecorded Mortgage Assignments Made During Securitization

168.    On or about December 29, 2005 the homeowner's Mortgage Loan was securitized by Defendant Goldman Sachs Mortgage Company, LaSalle Bank National Association (predecessor by merger to Defendant Bank of America, N.A.), and other financial institutions. To securitize, Defendants and others entered into a PSA, in which a trust was formed, the GSAMP Trust 2005-HE6 (the "GSAMP Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the GSAMP Trust.  In turn, the GSAMP Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Mortgage Pass-Through Certificates, Series 2005-HE6, Prospectus Supplement.

169.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the GSAMP Trust.

*Step 1*:  Originating Lender Maribella Mortgage, LLC assigned the Mortgage Loan to a sponsor, Goldman Sachs Mortgage Company.



*Step 2*:  Sponsor Goldman Sachs Mortgage Company then assigned the Mortgage Loan to a depositor, GS Mortgage Securities Corp.



*Step 3*:  Depositor GS Mortgage Securities Corp. finally assigned the Mortgage Loan to a trustee, LaSalle Bank, National Association (predecessor by merger to Bank of America, N.A.), on behalf of the GSAMP Trust 2005-HE6.



**Recorded Assignment in the Hennepin County Recorder's Office**

170.   On May 8, 2007, Scott Anderson, acting as "Vice President" of MERS, executed an Assignment of Mortgage to "Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for the Registered Holders of GSAMP Trust 2006-HE6."  On May 24, 2007 the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

171.   Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage, ***only 1 assignment was ever recorded*** in the Hennepin County Recorder's Office.

**Example 9: 6633 Eagle Lake Drive, Maple Grove, Minnesota 55369**

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

172.    On September 1, 2006, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Key Community Bank.  To do so, the homeowner executed a note in the amount of $536,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Key Community Bank on real property located at 6633 Eagle Lake Drive, Maple Grove, Minnesota 55369 ("Mortgage").

   a.    MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

173.    On September 7, 2006, the Mortgage was recorded at the Hennepin County Recorder's Office. Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

174.    On or about May 30, 2007 the homeowner's Mortgage Loan was securitized by Defendant The Bank of New York, Countrywide Home Loans Inc. (as predecessor-by-merger to Defendant Bank of America Corp.), and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the CHL Mortgage Pass-Through Trust 2007-8 (the "CHL Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the CHL Trust.  In turn, the CHL Trust held the pooled

mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Mortgage Pass-Through Certificates, Series 2007-8, Prospectus Supplement.

175.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the CHL Trust.

*Step 1*:  Originating Lender Key Community Bank assigned the Mortgage Loan to a seller, Countrywide Home Loans, Inc.



*Step 2*:  Seller Countrywide Home Loans, Inc. then assigned the Mortgage Loan to a depositor, CWMBS, Inc.



*Step 3*:  Depositor CWMBS, Inc. finally assigned the Mortgage Loan to a trustee, The Bank of New York, on behalf of the CHL Mortgage Pass-Through Trust 2007-8.



**Recorded Assignment in the Hennepin County Recorder's Office**

176.    On February 16, 2009, Steven H. Bruns, acting as "Vice President" of MERS, executed an Assignment of Mortgage to "The Bank of New York, as Trustee for the Benefit of the Certificateholders, CHL Mortgage Pass-Through Trust 2007-8 Mortgage Pass-Through Certificates, Series 2007-8."  On March 4, 2009, the Assignment of Mortgage was recorded in the Hennepin County Recorder's Office.

177.    Therefore, despite having effectuated *at least 3 assignments* of the Mortgage, *only 1 assignment was ever recorded* in the Hennepin County Recorder's Office.

### Example 10: 507 Russell Avenue North, Minneapolis, Minnesota 55405

**Recorded Mortgage and Assignment in the Hennepin County Recorder's Office**

178.    On January 26, 2004, a Hennepin County homeowner took out a mortgage loan ("Mortgage Loan") with originating lender, Decision One Mortgage Company, LLC.  To do so, the homeowner executed a note in the amount of $189,000 ("Note") in exchange for the loan and, to secure the Note, the homeowner executed a security instrument in the form of a mortgage to Decision One Mortgage Company on real property located at 507 Russell Avenue North, Minneapolis, Minnesota 55405 ("Mortgage").

    a.    MERS also appears on the Mortgage.  First identifying "*MERS [a]s a separate corporation acting as the nominee for the Lender* and Lender's successors and assigns", the Mortgage also provides that "*MERS is the mortgagee* under this Security Instrument."  Thus, the Mortgage identifies MERS as both the nominee for the lender and as the lender itself.

179.    On March 30, 2004, the Mortgage was recorded at the Hennepin County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

**Unrecorded Mortgage Assignments Made During Securitization**

180.    On or about May 3, 2004 the homeowner's Mortgage Loan was securitized by Defendant U.S. Bank, N.A. and other financial institutions.  To securitize, Defendants and others entered into a PSA, in which a trust was formed, the Home Equity Asset Trust 2004-3 (the "HEAT Trust"), and which memorialized their many assignments of pooled mortgage loans ultimately placed in the HEAT Trust.  In turn, the HEAT Trust held the pooled mortgage loans as collateral backing the securities issued and sold to investors, pursuant to the Home Equity Pass-Through Certificates, Series 2004-3, Prospectus Supplement.

181.    Public records indicate that the homeowner's Mortgage Loan (i.e., both the Note and Mortgage) *was assigned at least 3 times* during securitization.  The steps below detail each assignment of the Mortgage Loan, from initiation to its placement in the HEAT Trust.

*Step 1*:  Originating Lender Decision One Mortgage Company, LLC assigned the Mortgage Loan to a seller, DLJ Mortgage Capital, Inc.



*Step 2*:  Seller DLJ Mortgage Capital, Inc. then assigned the Mortgage Loan to a depositor, Credit Suisse First Boston Mortgage Securities Corp.



*Step 3*:  Depositor Credit Suisse First Boston Mortgage Securities Corp. finally assigned

the Mortgage Loan to a trustee, U.S. Bank, N.A., on behalf of the HEAT Trust 2002-

BC1.



**Recorded Assignment in the Hennepin County Recorder's Office**

182.    On December 9, 2004, Scott Anderson, acting as "Vice President" of MERS,

executed an Assignment of Mortgage to "U.S. Bank, N.A. as trustee for the registered holders of

Home Equity Asset Trust 2004-3."  On December 16, 2004, the Assignment of Mortgage was

recorded in the Hennepin County Recorder's Office.

183.    Therefore, despite having effectuated ***at least 3 assignments*** of the Mortgage,

***only 1 assignment was ever recorded*** in the Hennepin County Recorder's Office.

## CLASS ALLEGATIONS

184.    Plaintiffs Ramsey County and Hennepin County bring this class action on behalf

of themselves and, pursuant to Rule 23 of the Minnesota Rules of Civil Procedure, on behalf of

all other Minnesota counties (collectively referred to herein as the "Class").

185.    The Class is comprised of each of the 87 counties in the State of Minnesota (the

"Class Members"), thus joinder of all Class members in one action would be impracticable.

186.    The Class claims present common questions of law and fact that predominate over

questions that may affect particular putative class members individually, including without

limitation the following:

     a.     Whether Class Members are irreparably harmed by Defendants' conduct in violation of M.S.A. § 507.34 as alleged herein and are thus entitled to injunctive relief;

     b.     Whether Defendants failed to record every mortgage and mortgage assignment on real property located in Minnesota with the county recorder of the proper Class Member's county recording office, in accordance with M.S.A. § 507.34;

     c.     Whether Defendants should be enjoined from continuing to assign Minnesota mortgages without recording every mortgage and mortgage assignment in the proper Class Member's county recording office; and

     d.     Whether Defendants should be ordered to correct the failure to record every mortgage and mortgage assignment with the county recorder of the proper Class Member's county recording office, and thereby pay attendant recording fees, as required by Minnesota law.

187.     The claims asserted by Plaintiffs are typical of claims asserted for the Class in that all claims are based on the same legal and remedial theories:

     a.     Minnesota state law is applicable to all claims asserted by the Class;

     b.     Minnesota recording laws create identical requirements for the recording of every mortgage and mortgage assignment on real property located in Minnesota with the county recorder of the proper county recording office in each of Minnesota's 87 counties; and

     c.     Each Minnesota county is required by Minnesota state law to collect fees for the recording of every entitled mortgage and mortgage assignment presented to the county recorder for recording at the county recording office.

188.     Plaintiffs are adequate representatives of the Class that will fairly and adequately represent the interests of the Class.

189.     Plaintiffs have retained competent class counsel with experience in prosecuting class action litigations of this nature, and will vigorously prosecute the putative class claims alleged herein.

190.     This action is maintainable as a class action where Defendants have acted on grounds generally applicable to the Class thereby making final, injunctive, and declaratory relief, and a damage award appropriate with respect to the Class as a whole.

191.     Class action treatment is superior to other methods for resolution of this controversy where:

   a.     Separate actions by individual Class Members could lead to inconsistent adjudications for individual Class Members, which would impose varying conduct requirements for each Defendant;

   b.     Separate actions by individual Class Members could injure Class Members' ability to adequately protect their interests;

   c.     The financial burden on individual Class Members would make it impractical for them to pursue their claims against Defendants individually; and

   d.     Judicial economy would be served by maintenance of this action as a class action to avoid numerous individual lawsuits filed by Class Members.

## CLAIMS FOR RELIEF

### FIRST COUNT

**Declaratory Judgment and Injunctive Relief for Failure to Record
Mortgages and Assignments in Violation of M.S.A. § 507.34
(Against All Defendants)**

192.    Minnesota recording statutes, M.S.A. § 507.34, plainly mandate that mortgages and assignments thereof "shall" be recorded in, and attendant recording fees paid to, Minnesota county recorders' offices.  Requiring recordation of mortgages and assignments thereof is consistent with the Minnesota legislature's objective to maintain the integrity of the public land records, which in turn provides a reliable record available to the public at large, as well as interested parties, and promotes the liquidity in the real estate market.

193.    Thus, each time the Defendants assigned a Minnesota mortgage, yet purposely failed to prepare and record that assignment in the proper Minnesota county recorder's office, Defendants violated Minnesota law.

194.    Defendants' failure to record every mortgage assignment on real property in Minnesota in county recorders' offices constitutes an actual existing justiciable controversy between the parties, having opposing interests, which can and should be resolved by this Court through declaratory relief.

       a.    Moreover, both the counties and the public at large suffer real harm by being prevented from maintaining accurate, reliable land records whose chains of title are clouded with gaps that Defendants caused by failing to record all required land documents.

       b.    And, where Defendants bear statutory obligations to pay fixed fees to county recording offices (approximately $46.00 per mortgage and assignment) in accordance with Minnesota's mandatory statutory recording scheme, the pecuniary

damages here are tangible, and definite. The sole variable is the total public moneys illegally withheld from and/or due the counties, which is a commensurate amount purposely hidden by, and thus unknown to all, except the Defendants.

195.     Plaintiffs, therefore, request a judgment declaring that Defendants are required to: record every mortgage and mortgage assignment on real property located in Minnesota pursuant to M.S.A. § 507.34, and (ii) pay the attendant statutory recording fees to the county recording office in which the real property is located pursuant to M.S.A. § 357.18.

196.     Plaintiffs also request that this Court enter an injunction compelling Defendants to record every mortgage and mortgage assignment on real property located in Minnesota that was not recorded in the proper county recording office, and to immediately cease the practice of non-recording of mortgages and mortgage assignments on real property located in Minnesota counties.

## SECOND COUNT

### Unjust Enrichment (Against All Defendants)

197.     Recording the initial assignments in MERS' name conferred at least two distinct benefits upon Defendants.  First, by recording this initial assignment, MERS Members took advantage of the benefit of priority conferred by M.S.A. § 507.34.  Second, recording it allowed Defendants to represent to MBS investors that the underlying mortgage loans were first lien mortgages, which made the MBS appear safer and more attractive to investors, which was the ultimate end-game for Defendants—to quickly and cheaply securitize mortgage loans and sell the MBS to investors.  In doing so, Defendants adhered to the recording statutes when it suited them (i.e. recording the initial land instrument) and violated them when it was inconvenient for them (i.e. failing to record mortgage assignments leading to securitization).

198.   By their wrongful and improper conduct, Defendants were, and are, unjustly enriched at the expense of and to the detriment of Plaintiffs and the Class.

199.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs, on behalf of Ramsey County, Hennepin County and the Class, seek restitution from Defendants and respectfully requests that this Court disgorge all profits, benefits, and other compensation Defendants obtained by their wrongful and improper conduct.

## THIRD COUNT

### Public Nuisance (Against All Defendants)

200.   The systematic recording of false instruments in County Recorders' offices in violation of Minnesota law, including but not limited to M.S.A. § 231.36, and the systematic failure to record all instruments of writing for conveyance or encumbrance of lands or assignments thereof in violation of, *inter alia* M.S.A. § 507.34, interferes with rights common to the public including but not limited to the right to have maintained for the public benefit in every Minnesota County a true, accurate and complete set of real property records as the County Recorder is required to maintain by M.S.A. §§ 386.19 and 386.17.  Said interference threatens the interests of the general public in maintaining uniform and accurate real property records and has directly and proximately harmed the general public by preventing the disclosure of the identities of the true holders of interests in real property, obscuring transactions involving interests in real property and avoiding the payment of amounts owed to the public.

201.   Defendants' conduct alleged above created and continues to create an unreasonable interference with and significantly affected rights common to the general public. Plaintiffs herein suffered actual harm as a result of the condition created and maintained by

Defendants by being prevented from discharging her statutory duties and being deprived of fees

for the recording of instruments required by law to be recorded.

### PRAYER FOR RELIEF

WHEREFORE, on behalf of Ramsey County, Hennepin County and all other Minnesota

counties, by and through its undersigned counsel, Plaintiffs pray for judgment declaring and

determining that:

A.      This action is properly maintainable as a class action under Rule 23(B)(1)(a) of

the Minnesota Rules of Civil Procedure and/or Civ. R. 23(B)(1)(b), Civ. R. 23(B)(2) and Civ. R.

23(B)(3);

B.      Plaintiffs are adequate representatives of the Class, and Plaintiffs' counsel is

designated lead counsel for the Class;

C.      Every mortgage and mortgage assignment on real property located in Minnesota

shall be recorded by Defendants with the proper Class Members' county recorder in the county

recording office in which the property is located, thereby paying Plaintiffs and the Class

attendant recording fees;

D.      Defendants are permanently enjoined from non-recordation of mortgages and

mortgage assignments on real property located in Minnesota with the county recorder in the

recording office in the county in which the property is located;

E.      Plaintiffs and the Class are entitled to restitution and disgorgement of Defendants'

profits, benefits, and other compensation Defendants obtained by their wrongful and improper

conduct;

F.      Plaintiffs and the Class are entitled to an award of damages as set forth above;

G.      Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees and costs of bringing this action; and

H.      Plaintiffs and the Class are entitled to such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  February _14_, 2013

**BERNSTEIN LIEBHARD LLP**
Christian Siebott
Jeffrey Lerner
Peter Harrington
10 E. 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Fax: (212) 779-3218
Email: siebott@bernlieb.com
        lerner@bernlieb.com
        pharrington@bernlieb.com

*Of Counsel to Plaintiffs*

**FOLEY LAW, PLC**

_Tom Foley_

Tom Foley (0030697)
Suite W 1450
332 Minnesota Street
Saint Paul, MN 55101
Telephone: (651) 214-9978
Fax: (651) 602-9976
Email: tomfoley@pacemn.com

**HAMILTON QUIGLEY & TWAIT, PLC**
Kevin Quigley (0182771MN)
W1450 First National Bank Building
332 Minnesota Street
Saint Paul, MN 55101
Telephone: (651) 602-6262
Fax: (651) 602-9976
Email: kevinquigley@pacemn.com

**Ramsey County Attorney**
John J. Choi (257175)
John T. Kelly (0214097)
Kyle Thomas (0241428)
50 Kellogg Blvd West, Suite 315
Saint Paul, MN 55102-1657
Telephone: (651) 266-3079
Fax: (651) 266-3032
Email: john.choi@co.ramsey.mn.us
        john.kelly@co.ramsey.mn.us
        kyle.thomas@co.ramsey.mn.us

**Hennepin County Attorney**
Michael O. Freeman (0031860)
Paul Hannah (40502)
Jane Holzer (388598)
C-2000 Government Center
Minneapolis, MN 55487
Telephone: (612) 348-5529
Fax: (612) 348-8299
Email: paul.hannah@co.hennepin.mn.us
        michael.freeman@co.hennepin.mn.us
        jane.holzer@co.hennepin.mn.us