```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                       Civil No. 13-474(DSD/LIB)
```

The County of Ramsey, on behalf
of themselves and all other
Minnesota counties and The
County of Hennepin, on behalf
of themselves and all other
Minnesota Counties,

       Plaintiffs,

v.                                                                                                          **ORDER**

MERSCORP Holdings, Inc., Mortgage
Electronic Registration Systems,
Inc., Bank of America Corporation,
Bank of America, N.A., Citigroup,
Inc., Citibank, N.A., CitiMortgage,
Inc., Deutsche Bank National Trust
Company, EverBank, Goldman Sachs
Mortgage Company, GS Mortgage
Securities Corp., HSBC Bank USA,
N.A., JP Morgan Chase Bank NA, Morgan
Stanley ABS Capital I, Inc., SunTrust
Mortgage, Inc., TCF National Bank, The
Bank of New York Mellon, United Guaranty
Corporation, US Bank N.A., Wells Fargo
Bank N.A., and Does Corporation I-MMM,

       Defendants.


     Thomas J. Foley, Esq., Foley Law Group, 332 Minnesota
     Street, Suite W-1450, St. Paul, MN 55101; John J. Choi,
     Esq., John T. Kelly, Esq., Kyle M. Thomas, Esq., Office
     of the Ramsey County Attorney, 121 Seventh Place East.
     Suite 4500, St. Paul, MN 55101; Christian Siebott, Esq.,
     Jeffrey D. Lerner, Esq. and Bernstein Liebhard LLP, 10
     East 40th Street, 22nd Floor, New York, NY 10016; Kevin C/
     Quigley, Esq. and Hamilton, Quigley & Twait, PLC, 332
     Minnesota Street, Suite W-1450, St. Paul, MN 55101;
     Michael O. Freeman, Esq., Jane N.B. Holzer, Esq., Paul R.
     Hannah, Esq., Office of the Hennepin County Attorney, 300
     South Sixth Street, Suite C-2000, Minneapolis, MN 55487,
     counsel for plaintiffs.

Robert M. Brochin, Esq. and Morgan, Lewis & Bockius LLP, 200 South Biscayne Boulevard, Suite 5300, Miami, FL 33131; Brendan Radke, Esq., Elizabeth A. Frohlich, Esq. and Morgan Lewis & Bockius LLP, One market Spear Street Tower, San Francisco, CA 94105; Robert J. Pratte, Esq., Fulbright & Jaworski LLP, 80 South Eighth Street, Suite 2100, Minneapolis, MN 55402; Joseph F. Yenouskas, Esq., Thomas M. Hefferon, Esq. and Goodwin Procter LLP, 901 New York Avenue N.W., Washington, D.C. 20001; Kevin M. Decker, Esq., Mark G. Schroeder, Esq. and Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402; Christopher S. Comstock, Esq., Lucia Nale, Esq., Thomas V. Panoff, Esq. and Mayer Brown LLP, 71 South Wacker Drive, Chicago, IL 60606; Thomas J. Lallier, Esq., Cameron A. Lallier, Esq., Thomas W. Pahl, Esq. and Foley & Mansfield, PLLP, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401; Brian M. Forbes, Esq., R. Bruce Allensworth, Esq., Ryan M. Tosi, Esq. and K & L Gates LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111; Todd A. Noteboom, Esq., Bryant D. Tchida, Esq., David R. Crosby, Esq. and Leonard, Street and Deinard, PA, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402; Gregory J. Marshall, Esq., One Arizona Center, 400 East Van Buren, Phoenix, AZ 85004; Charles F. Webber, Esq., Erin L. Hoffman, Esq. and Faegre Baker Daniels, LLP, 90 South Seventh Street, Suite 2200, Minneapolis, MN 555402; Andrew R. Louis, Esq., Matthew P. Previn, Esq. and Buckley Sandler LLP, 1250 24th Street N.W., Suite 700, Washington, DC 20037; Sonya R. Braunschweig, Esq., William F. Stute, Esq. and DLA Piper LLP, 80 South Eighth Street, Suite 2800, Minneapolis, MN 55402; Kyle A. Eidsness, Esq., Timothy D. Kelly, Esq. and Timothy D. Kelly, P.A., Suite 3720, 80 South Eighth Street, Minneapolis, MN 55402; Brandon B. Cate, Esq., Joseph R. Falasco, Esq. and Quattlebaum, Grooms, Tull & Burrow PLLC, 4100 Corporate Center Drive, Suite 210, Springdale, AZ 72762; Matthew C. Murphy, Esq. and Nilan, Johnson & Lewis, PA, Suite 400, 120 South Sixth Street, Minneapolis, MN 55402; David M. Aafedt, Esq., Joseph M. Windler, Esq. and Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402; Todd S. Kartchner, Esq., Fennemore Craig, 2394 East Camelback Road, Suite 600, Phoenix, AZ 85016; Eric R. Sherman, Esq., Peter W. Carter, Esq. and Dorsey & Whitney, LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendants (collectively, MERS Defendants).[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the motion is granted.

**BACKGROUND**

This dispute arises out of the MERS Defendants' failure to record mortgage assignments with Minnesota county recorders.

**MERS & Mortgage-Backed Securities**

In the 1990s, mortgage-backed securities (MBS) emerged as a popular investment vehicle. As part of the securitization process, lender banks initiated residential mortgage loans, which were then resold to other commercial and investment banks. Compl. ¶ 40. Often the mortgage loans were pooled into trusts and issued to investors as an MBS. Id.

To facilitate the MBS process, defendant Mortgage Electronic Registration System, Inc. (MERS) established a national electronic registry (MERS Registry) to track servicing rights and mortgage

---

[1] Defendants include MERSCORP Holdings, Inc.; Mortgage Electronic Registration Systems, Inc.; Bank of America Corporation; Bank of America, N.A.; Citigroup Inc.; Citibank, N.A.; CitiMortgage, Inc.; Deutsche Bank National Trust Company; EverrBank; Goldman Sachs Mortgage Company; GS Mortgage Securities Corp.; HSBC Bank USA, N.A.; JP Morgan Chase Bank N.A.; Morgan Stanley ABS Capital I, Inc.; SunTrust Mortgage, Inc.; TCF National Bank; Bank of New York Mellon; United Guaranty Corporation; U.S. Bank N.A.; and Wells Fargo Bank N.A.

3

ownership.[2] Id. ¶ 51. MERS does not itself originate, assign, or service mortgages, but instead charges a fee when participating members transfer mortgages on the MERS Registry. Id. ¶¶ 53-55.

As part of the MBS process, MERS members initiate residential mortgage loans and record the transaction in the Minnesota county where the property is located. The MERS member then lists MERS as, among other names, the "mortgagee of record" or as a nominee for the participating MERS bank. Id. ¶ 57. Once this initial recording occurs, MERS members can then transfer the ownership rights of the mortgage, often as part of an MBS, to other MERS members. These transfers are recorded in the MERS Registry, but not with the Minnesota county recorder where the property is located. Id. ¶ 61.

**Minnesota Statutes § 507.34**

In Minnesota, "[e]very conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated." Minn. Stat. § 507.34. The county recorder collects a fee to index and record these conveyances. See id. § 357.18. In the present dispute, plaintiffs Ramsey County and Hennepin County (collectively, Minnesota Counties) allege that each

---

[2] In re Mortgage Electronic Registration Systems (MERS) Litigation, 659 F. Supp. 2d 1368, 1370 n.6 (J.P.M.L. 2009), provides a succinct description of how MERS operates.

mortgage transfer on the MERS Registry should have been filed with the county recorder. The MERS Defendants deny that such an obligation exists.

On February 14, 2013, the Minnesota Counties filed a class-action complaint in Minnesota court seeking a declaration that the MERS Defendants violated Minnesota Statutes § 507.34 by assigning mortgages within the MERS Registry without recording the assignment with the county recorder where the property is located. The Minnesota Counties also allege unjust enrichment and public nuisance. The MERS Defendants timely removed, and move to dismiss.[3]

## DISCUSSION

### I. Standing

Despite only moving to dismiss under Rule 12(b)(6), the MERS Defendants argue that the Minnesota Counties lack standing to bring this lawsuit. As a result, before addressing the merits of the action, the court must determine if subject-matter jurisdiction is present. See South Dakota v. U.S. Dep't of Interior, 665 F.3d 986,

---

[3] Defendant TCF National Bank joins the MERS Defendants' motion to dismiss, but also moves to dismiss on separate grounds. See ECF No. 87. Additionally, defendant United Guaranty moves for a more definite statement under Rule 12(e). See ECF No. 90. Because the court grants the MERS Defendants' motion to dismiss, the court need not address these motions.

5

989 (8th Cir. 2012) (describing standing as "a threshold inquiry" (citation and internal quotation marks omitted)).

"To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an injury-in-fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." Ctr. for Special Needs Trust Admin., Inc. v. Olson, 676 F.3d 688, 697 (8th Cir. 2012) (citations and internal quotation marks omitted). Here, the Minnesota Counties allege that the failure to record mortgage transfers resulted in a loss in recording fees and inaccurate county land records. Such an allegation is sufficient to establish Article III standing. See, e.g., Jackson Cnty., Mo. ex rel. Nixon v. MERSCORP, Inc., 915 F. Supp. 2d 1064, 1068 (W.D. Mo. 2013) (declining to dismiss substantially-similar lawsuit on standing grounds). Therefore, the Minnesota Counties possess standing to bring this action, and the court addresses their claims on the merits.

**II. Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded]

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

### A. Minnesota Statutes § 507.34

The Minnesota Counties first seek a declaration that MERS members violated Minnesota law by transferring mortgages on the MERS Registry without recording the conveyance in the Minnesota county where the property was located. In support, the Minnesota Counties cite Minnesota Statutes § 507.34, which states, in relevant part, that

> [e]very conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded.

In response, the MERS Defendants argue that § 507.34 is permissive and merely explains where a mortgage should be recorded if the mortgagee wants to avail themself of the protections of § 507.34.

7

### 1. Plain Language

The court's goal in interpreting § 507.34 "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. The court begins by "determin[ing] whether the statute's language, on its face, is ambiguous." Larson v. State, 790 N.W.2d 700, 703 (Minn. 2010) (citation and internal quotation marks omitted). "If the statute is clear and not ambiguous, then [the court] appl[ies] its plain and ordinary meaning." A.A.A. v. Minn. Dep't of Human Servs., 832 N.W.2d 816, 819 (Minn. 2013) (citation omitted). Conversely, if a statute is susceptible to more than one reasonable interpretation, the court "look[s] beyond the statutory language to determine legislative intent." Id. (citation omitted).

"A statute is ambiguous if it is reasonably susceptible to more than one interpretation." Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., 825 N.W.2d 695, 710 (Minn. 2013) (citation and internal quotation marks omitted). "In construing the language of a statute, [the court] give[s] words and phrases their plain and ordinary meaning." Emerson v. Sch. Bd. of Indep. Sch. Dist. 199, 809 N.W.2d 679, 682 (Minn. 2012) (citations omitted). "Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous." Christianson v. Henke, 831 N.W.2d 532, 537 (Minn. 2013) (citation omitted). In so doing, the court interprets the statute in such a manner that renders no provision meaningless. See State v. Wilson, 830 N.W.2d 849, 853 (Minn. 2013)

(citation omitted); see Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277 (Minn. 2000) ("We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." (citations omitted)).

The Minnesota Counties argue that § 507.34 creates a mandatory recording obligation, as it states that every conveyance shall be recorded. See e.g., State by Beaulieu v. RSJ, Inc., 552 N.W.2d 695, 702 (Minn. 1996) ("The word 'shall' is mandatory .... [and the] court is not at liberty to ignore the legislature's plain and unambiguous language." (internal citation omitted)). The MERS Defendants respond that the term "shall" cannot be read in isolation and must be interpreted in conjunction with the remainder of § 507.34. Specifically, the MERS Defendants argue that the "shall be recorded" language informs where the mortgage should be recorded if the mortgagee wants to avoid the consequence - loss of priority - of not recording the conveyance. The court agrees and determines that only the MERS Defendants' proffered interpretation of § 507.34 is a reasonable construction of the plain language of the statute.

Under the Minnesota Counties' interpretation, the court must conclude its reading of the first sentence[4] of § 507.34 after the

---

[4] For ease of discussion, the court references the text prior to the first semicolon in § 507.34 as "the first sentence" and the
(continued...)

9

"shall be recorded" text. Such a reading of the statute is improper, as it would excise the condition that the conveyance be recorded in the county where the property is located. See Stanton v. Mazda 2001 VIN 4F2YU08121KM57063, 660 N.W.2d 137, 140 (Minn. Ct. App. 2003) ("The legislature intends to give effect to all words of a statute." (citation omitted)).

Indeed, nothing in the statute suggests - either through text or punctuation - that the phrase "shall be recorded" is to be divorced from the surrounding text. Instead, the legislature is presumed to follow accepted standards of grammar, and the court will not torture its reading of § 507.34 to effectively end the sentence after the word "recorded." See United States v. Project on Gov't Oversight, 616 F.3d 544, 557 (D.C. Cir. 2010) ("There is no punctuation or other reason to suggest" that the court was to limit its interpretation of the statute to "services" when "[t]he statute bars payment to an individual as compensation 'for his services as an officer or employee of the executive branch.'" citation omitted)). As a result, the first sentence of § 507.34 unambiguously supports the MERS Defendants' proposed interpretation.

Such a conclusion is reinforced by the second sentence of § 507.34, which states that "*every such conveyance not so recorded*

---

[4](...continued)
text after the first semicolon as "the second sentence."

shall be void as against any subsequent purchaser in good faith and for a valuable consideration." Minn. Stat. § 507.34 (emphasis added). In other words, the second sentence specifically contemplates that not all conveyances will be recorded and outlines the consequence of failing to do so. If the recording of all conveyances was mandatory, as the Minnesota Counties contend, such language would be superfluous. Under the Minnesota Counties' interpretation, there would be no reason for the statute to explain that a subsequent, bona-fide purchaser for value would obtain a superior interest in the property. See Schroedl, 616 N.W.2d at 277 ("A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (citation and internal quotation marks omitted)). As a result, the court concludes that the plain language of § 507.34 is unambiguous and does not establish a duty to record all conveyances; rather, it outlines where to record and explains the consequence - loss of priority - of failing to do so.

### 2. Persuasive Guidance

Even if the court had found the text of § 507.34 to be ambiguous, principles of statutory construction and Minnesota caselaw indicate that the statute does not establish a mandatory recording obligation. The rules of statutory construction explain that "[a] section of a statute ... should not be read in isolation

11

from the context of the entire act." Baker v. United States, 460 F.2d 827, 849 n.15 (8th Cir. 1972) (Lay, J., concurring in part and dissenting in part) (second alteration in original) (citation omitted); see Schroedl, 616 N.W.2d at 278 ("The operation of Minn. Stat. § 65B.491 only becomes clear when it is read in conjunction with the rest of the No-Fault Act." (citation omitted)). Consideration of § 507.34 in the larger context of the Recording Act reinforces that the legislature did not intend to create a mandatory recording obligation.

Indeed, a similar section of the Act - Minnesota Statutes § 507.235 - demonstrates that the legislature knows how to create a mandatory recording obligation when it so desires. Similar to § 507.34, section 507.235 mandates that "[a]ll contracts for deed ... shall be recorded." Minn. Stat. § 507.235, subdiv. 1. Section 507.235, however, provides additional direction, such as who must record the conveyance and when it must be recorded. See id. (explaining that vendee must record within four months). Moreover, the statute provides that "[a] vendee who fails to record a contract for deed ... is subject to a civil penalty ... equal to two percent of the principal amount of the contract debt," id. at subdiv. 2, and explains that the municipality may "bring an action to compel the recording" of an unrecorded conveyance. Id. at subdiv. 5. As § 507.235 illustrates, when the legislature intends to create a mandatory reporting obligation, it provides who shall

record the conveyance, when the conveyance shall be recorded, the penalty for not recording the conveyance and includes a civil enforcement mechanism. By comparison, no such specifics are present in § 507.34, which bolsters the conclusion that it does not create a mandatory recording obligation.[5] See Jama v. ICE, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Minnesota courts agree, explaining that "[t]he purpose of [§ 507.34] is to protect those who purchase real estate in reliance upon the record." Claflin v. Commercial State Bank of Two Harbors, 487 N.W.2d 242, 248 (Minn. Ct. App. 1992) (citation omitted); see Citizens State Bank v. Raven Trading Partners, Inc., 786 N.W.2d 274, 278 (Minn. 2010) ("The purpose of the Minnesota Recording Act is to protect recorded titles against the gross negligence of those who fail to record their interests in real property." (citation

---

[5] Such a conclusion is buttressed by the title of § 507.34, "Unrecorded Conveyances Void in Certain Cases," which contains no indication that the section creates a mandatory recording obligation. See Nw. Airlines, Inc. v. Friday, 617 N.W.2d 590, 595 (Minn. Ct. App. 2000) (using title of statute to discern legislative intent). But see Minn Stat. § 645.49 ("The headnotes printed in boldface type before sections and subdivisions in editions of Minnesota Statutes are mere catchwords to indicate the contents of the section or subdivision and are not part of the statute.").

13

omitted)); Miller v. Hennen, 438 N.W.2d 366, 369 (Minn. 1989) (same). Indeed, the Minnesota Supreme Court explains:

> The Recording Act *creates no obligations*; rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title .... By contrast, the foreclosure by advertisement statutes prescribe mandatory requirements which must be met for a party to proceed under the statutes.

Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 495 (Minn. 2009) (emphasis added) (citations omitted).

The foreclosure-by-advertisement statutes referenced by Jackson mandate that any party instituting a non-judicial foreclosure must confirm that the "mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded." Minn. Stat. § 580.02(3). Like the language of § 507.235, Jackson illustrates that the legislature knows how to enact a mandatory recording obligation, and the court will not read such a requirement into § 507.34 when none exists.[6]

In response, the Minnesota Counties argue that Jackson is unpersuasive, as it did not concern mortgage assignments but only analyzed whether MERS was required to record assignments of the promissory note prior to commencing a foreclosure by advertisement.

---

[6] The court also notes that the MERS Registry is implicitly approved by Jackson. See 770 N.W.2d at 494 ("By passing the MERS statute [Minn. Stat. § 507.413], the legislature appears to have given approval to MERS' operating system for purposes of recording.").

See Jackson, 770 N.W.2d at 493. In other words, the Minnesota Counties argue that Jackson's discussion of the Recording Act is dicta and is inapplicable to any analysis of § 507.34. A court sitting in diversity, however, is tasked with "predict[ing] how the Supreme Court of Minnesota would rule," Friedberg v. Chubb & Sons, Inc., 691 F.3d 948, 951 (8th Cir. 2012) (citation omitted), and even if dicta, Jackson provides insight as to how Minnesota's highest court would interpret § 507.34. See U.S. Fid. & Guar. Co. v. Louis A. Roser Co., 585 F.2d 932, 939 (8th Cir. 1978) (providing that "a recent decision of the Supreme Court of Minnesota contains *dicta* which is instructive"); Michael-Curry Cos. v. Knutson S'holders Liquidating Trust, 434 N.W.2d 671, 675 (Minn. Ct. App. 1989) (relying on, among other persuasive authority, dicta from a Minnesota Supreme Court opinion). In sum, based on an analysis of its plain language, canons of construction and treatment by other courts in Minnesota, the court concludes that § 507.34 does not create a mandatory recording obligation. Therefore, the Minnesota Counties declaratory judgment claim fails, and dismissal is warranted.

### B. Remaining Claims

The Minnesota Counties also raise claims for unjust enrichment and public nuisance. These claims, however, are premised on the Minnesota Counties' argument that § 507.34 creates a mandatory recording obligation. For the reasons already stated, this

15

argument fails. Therefore, dismissal of these claims is also warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss [ECF No. 72] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 26, 2013

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court